UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM DEWEY FOSTER,

        Petitioner,

v.                                    Case No. 3:16-cv-1530-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner William Foster, an inmate of the Florida penal system, initiated this action on December 8, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Foster challenges a 2010 state court (Putnam County, Florida) judgment of conviction for first-degree murder with a firearm. Foster raises five grounds for relief. See Petition at 5-16.[2] Respondents have submitted a memorandum in opposition to the Petition. See Response to Petition (Response; Doc. 11) with exhibits (Resp. Ex.). On October 20, 2017, Foster submitted a brief in reply. See Reply to Respondent's Response Issued on May 24, 2017 (Reply; Doc. 15). This case is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On January 12, 2009, a grand jury indicted Foster on one count of first-degree murder with a firearm. Resp. Ex. B at 6. Foster proceeded to a jury trial, at the conclusion of which the jury found him guilty as charged. Id. at 565. On December 15, 2010, the circuit court sentenced Foster to a term of incarceration of life in prison without the possibility of parole. Id. at 576.

Foster initiated a direct appeal of his conviction and sentence in Florida's Fifth District Court of Appeal (Fifth DCA). Id. at 580. With the assistance of counsel, he filed an initial brief arguing that the circuit court erred by denying his motion to suppress his confession. Resp. Ex. C. The State filed an answer brief. Resp. Ex. D. On January 24, 2012, the Fifth DCA per curiam affirmed the conviction and sentence without a written opinion, Resp. Ex. E, and, on February 17, 2012, issued the Mandate. Resp. Ex. F.

On May 17, 2012, Foster filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. G at 1-11. He filed an amended motion on February 11, 2013 (Amended Rule 3.850 Motion). Id. at 62-78. In the Amended Rule 3.850 Motion, Foster raised the following claims of ineffective assistance, alleging counsel: (1) conceded his guilt during closing arguments; (2) failed to introduce exculpatory evidence; (3) failed to object to the State's introduction of evidence during closing argument; and (4) failed to file a motion to recuse the trial judge due to a conflict of interest. Id. The circuit court denied the Amended Rule 3.850 Motion. Id. at 100-04, 136-39. On September 27, 2016, the Fifth DCA per curiam affirmed the denial, without a written opinion. Resp. Ex. K. Foster filed a pro se motion for rehearing, Resp. Ex. L, which

the Fifth DCA denied on November 3, 2016. Resp. Ex. M. The Fifth DCA issued the Mandate on November 22, 2016. Resp. Ex. N.

On June 24, 2012, Foster filed a petition for writ of habeas corpus with the Fifth DCA, in which he alleged his appellate counsel was ineffective for failing to raise a fundamental error argument concerning an erroneous manslaughter jury instruction. Resp. Ex. O. Foster later filed an addendum to his petition arguing that trial counsel was ineffective for conceding his guilt during closing arguments. Resp. Ex. P. The Fifth DCA denied the petition and addendum on September 14, 2012. Resp. Ex. S. Foster moved for a rehearing, Resp. Ex. T, which the Fifth DCA denied on November 7, 2012. Resp. Ex. U.

### III. One-Year Limitations Period

The Petition was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."

Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Foster's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

## A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does

> provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state

court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance

prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

As an initial matter, the Court notes that each of the five grounds for relief Foster raises in the Petition is set forth in a single conclusory sentence. He points to no specific facts in support of any of his claims, and he fails to direct the Court to any portions of the record which might relate to or support his claims. As a result, none of the grounds identified by Foster satisfy the heightened pleading requirements governing federal habeas petitions. See Mayle v. Felix, 545 U.S. 644, 648 (2005) (noting that Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a detailed statement that specifies all the grounds for relief and states facts in support of each ground); McFarland v. Scott, 512 U.S. 849, 856 (1994) (explaining that Rule 2(c) of the Rules Governing Habeas Corpus Cases mandates a heightened pleading requirement); Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011) (Rules Governing Section 2254 Cases in the United States District Court "mandate 'fact pleading' as opposed to 'notice pleading.'"). For this reason alone, Foster's Petition is due to be denied. Nevertheless, in an abundance of caution the Court will consider the substance of his claims as they were identified before the state circuit court.

## A. Ground One

Foster alleges that the circuit court committed fundamental error by denying his motion to suppress his confession after determining that Foster did not make an unequivocal or unambiguous invocation of his right to remain silent. Petition at 5. Notably, this statement is the extent of his allegations in Ground One. Id.

On February 18, 2010, defense counsel filed a motion to suppress Foster's confession, arguing that Foster made an unequivocal request to stop the interview, law

enforcement threatened Foster, and Foster was under the influence of alcohol at the time of the confession. Resp. Ex. B at 78-79. Counsel later filed an amended motion to suppress that raised the same allegations. Id. at 233-34. The circuit court denied the amended motion to suppress at the conclusion of an evidentiary hearing held on May 27, 2010. Id. at 422. In ruling on the motion to suppress, the circuit court went through each statement Foster alleged was an unequivocal and unambiguous effort to end questioning and concluded the statements were either equivocal or ambiguous, or both. Id. at 682-88. In summation, the circuit court stated:

> When I look at the totality of the statement and each of these – each of these statements, as referenced by the Defense, from Mr. Foster, it strikes me that I'm not sure what they mean. It does not strike me as being an unequivocal and unambiguous effort to end the questioning. Quite the contrary. It seems to me that – ambiguous, as I said, means capable of more than one conclusion.
>
> And my reading of this indicates to me that the probability of the meaning of these statements is that I'll give you more if I can get something in return; meaning, some time with my family.
>
> So the ruling is that these statements taken together are at least – at a very minimum they're ambiguous. And if there's – if I had to resolve the ambiguity on the basis of probability, then I would do that by saying that probably they mean that it's a continuing negotiation.
>
> I don't – I did not see any other statements in my reading of the transcript that indicated a clear – there was no reference, as I said before, to an attorney that I saw. And then, secondly, I didn't see any reference, other than what we've talked about, insofar as statements that Mr. Foster made that could be interpreted to mean that he didn't want to end the interview.
>
> So on the basis of those statements that I've referenced and the reasoning that I've attempted to come to, I think under the law, under the case law, because the

statements are not unequivocal and unambiguous about ending the interview, that the Motion to Suppress – a Motion to Suppress Confession or Admission Illegally Obtained is denied.

Id. at 688-89. Foster raised the circuit court's denial of his motion to suppress on direct appeal. Resp. Ex. C. The Fifth DCA per curiam affirmed the circuit court's ruling without a written opinion. Resp. Exs. E; F.

To the extent that the Fifth DCA decided the claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Foster is not entitled to relief on the basis of this claim.

Even if the state appellate court's adjudication of the claim is not entitled to deference, the claim in Ground One is without merit. Although lacking any factual development or support, the Court assumes Foster alleged this claim in the same manner as he did in the circuit court, and concludes that the claim is due to be denied because Foster never made an unequivocal and unambiguous statement of his desire to end the interview. The Eleventh Circuit has explained:

In Miranda,[8] the Supreme Court held that when a person questioned in police custody indicates that "he wishes to

---

[7] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

[8] Miranda v. Arizona, 384 U.S. 436 (1966).

remain silent, the interrogation must cease." Miranda, 384 U.S. at 473–74, 86 S.Ct. at 1627. However, a defendant who wishes to invoke his right to remain silent must do so "unambiguously" and "unequivocal[ly]." See Davis,[9] 512 U.S. at 458–62, 114 S.Ct. at 2355–57 (stating that a "suspect must unambiguously request counsel" and "[i]f the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him"); Berghuis v. Thompkins, —— U.S. ——, 130 S.Ct. 2250, 2259–60, 176 L.Ed.2d 1098 (2010) (noting Davis held that an ambiguous or equivocal invocation of Miranda's right to counsel did not require police to stop questioning or to ask only clarifying questions, and determining that "there is no principled reason to adopt different standards for determining when an accused has invoked the Miranda right to remain silent and the Miranda right to counsel").

Owen v. Fla. Dep't of Corr., 686 F.3d 1181, 1192-93 (11th Cir. 2012). The record reflects that law enforcement officers informed Foster of his Miranda rights at the beginning of the December 23, 2008 interrogation and Foster agreed to waive those rights. Resp. Ex. B at 82-84. Nevertheless, Foster claims that he later made an unequivocal and unambiguous request to end the interview. Reply at 2. The Court reviews each statement identified by Foster before the circuit court in support of this claim below.

### a.    "I don't have anything to say, really."

Preceding this statement, police were confronting Foster with statements from a co-defendant, Clint Horvatt, that implicated Foster in the murder. Resp. Ex. B at 85-93. Officers then asked a rhetorical question about why Horvatt would admit his own guilt and implicate Foster as well. Id. at 93-94. After which, Foster stated "I don't have anything to say really. I don't know what to say." Id. at 94. When read in context, Foster's statement is not an unequivocal and unambiguous request to the end the interview but his apparent

---

[9] Davis v. United States, 512 U.S. 452 (1994).

answer to the rhetorical question. As such, the circuit court did not err in finding this statement did not demonstrate police violated his Fifth and Fourteenth Amendment rights.

### b. "I told you everything I can, John. Everything that I know. I don't know anything else about what's going on. You all guys go do what you got to do. That's it."

Police were questioning Foster about whether he was going to stick to his alibi story and not admit his fault in light of Horvatt's confession, at which point Foster gave this statement. <u>Id.</u> at 94-95. The Court finds that these statements do not amount to an unequivocal and unambiguous request to stop the interrogation. Instead, this statement reflects Foster's continued recalcitrance in denying his involvement in the murder. Accordingly, Foster is not entitled to relief on the basis of this comment.

### c. "Well, I ain't got nothing else to say."

Prior to this comment, officers were attempting to get Foster to confess to his role in the murder and discussed with Foster that a prosecutor would be coming soon, and Foster would not be going home. <u>Id.</u> at 107-08. The following exchange then occurred:

Detective Merchant: Well, Bill, it's up to you, man.

Mr. Foster: Well, I ain't got nothing else to say. He's full of [expletive].

If I had a guarantee, I mean a serious guarantee, things could change. But, I mean, a guarantee.

<u>Id.</u> at 108. In this context, it is evident that Foster was not seeking to end the interview but rather to negotiate a means in which he could confess. Therefore, this statement would not have been a basis to suppress his confession.

### d. "Forget it . . . that's it."

Here, Detective Merchant and Foster were still discussing Foster going home for the night. Id. at 114-18. Detective Merchant informed Foster prior to this statement that he had authority to take Foster back to his home momentarily to talk with his family, but they would not allow him to spend the night there and then continue the interview in the morning. Id. at 114-18. Apparently frustrated, Foster then states, "No. Forget it." Id. at 119. Detective Merchant follows up by commenting "Okay. That's up to you.," at which point Foster says, "That's it." The Court finds Foster's comment "Forget it" was directed at the plan to take Foster home for a short period of time, not about ending the interview. Accordingly, this comment was not an unequivocal and unambiguous statement to cease the interrogation.

### e. "Well, do whatever you want to. Just no sense us discussing it any further if you want to do it that way. I don't have anything else to say."

This statement arose after Detective Merchant told Foster it was not a possibility for him to go home and sleep and just have an officer wait outside his house. Id. at 124. At which point, Foster made the above comment out of apparent frustration with his inability to go home and sleep before continuing the interview. Id. at 125. The context of these statements do not make it seem as if Foster wanted to end the interrogation, but rather end the discussion over his ability to go home for the night. As such, these comments are not unequivocal and unambiguous attempts to end the interrogation.

### f. "Just go ahead and finish what we got to do here. Go ahead put me in my cell."

Before Foster made this statement, he told Detective Merchant that he would rather not go home if he was not allowed to spend the night and had to have a police

officer present. Id. at 125. Detective Merchant then offered to bring his family here to visit. Id. However, Foster declined and then stated "Just go ahead and finish what we got to do here. Go ahead put me in my cell or whatever." Id. This statement is ambiguous because it could be read as Foster telling Detective Merchant that he would rather finish the interview at the police station. Accordingly, Foster's statement here would not have entitled him to suppression of his confession.

### g. "I'm not going to give a statement."

Prior to this comment, Foster and Detective Merchant exited the room for approximately ten minutes. Id. at 110. When they returned the following conversation took place:

> Detective Merchant: Just sit here and think about it for a minute. Okay? All right? What we talked about is, you know, when you want to give a statement.
>
> Mr. Foster: I'm not going to give a statement. You know, I told you guys that I was going to and y'all ain't going to go along with what I'm going to do tonight."
>
> Detective Merchant: What is it you want from me?
>
> Mr. Foster: I want to go home.
>
> Detective Merchant: In exchange for what?
>
> Mr. Foster: For all the evidence and my testimony in the morning.

Id. at 110-11. The Court finds this comment equivocal and ambiguous because Foster still informed police that he would talk with them and give them evidence. Foster was attempting to negotiate an end to the interview that night to restart it the next day, not to terminate any further interview. Accordingly, this statement would not have formed a basis for suppressing his confession.

In light of the above analysis, the statements Foster presents as evidence of his unequivocal and unambiguous attempts to end the interrogation are in fact equivocal and ambiguous. See Owen, 686 F.3d at 1192-93. Therefore, the circuit court did not err in denying his motion to suppress. For the above stated reasons, Foster's claim for relief in Ground One is due to be denied.

## B. Ground Two

In Ground Two, Foster avers that "[t]rial counsel agreed to defendant's guilt during closing arguments, thereby effectively changing the his [sic] 'not guilty' plea to a 'guilty' plea without the defendant's permission, in violation of the guaranteed rights under the 5th, 6th, and 14th Amendments of the United States Constitution." Petition at 7. This single sentence encompasses all of Foster's allegations in Ground Two.

Foster raised a similar claim in his Amended Rule 3.850 Motion. Resp. Ex. G at 63-66. The circuit court denied this claim, explaining:

> On this ground, Defendant appears to be referring to Trial Counsel's statement that "there is a substantial amount of evidence indicating that Bill Foster's guilty of homicide." When the statement is read in its totality, clearly it was not an assertion of Defendant's guilt but instead a strategy capitalizing on evidentiary standards. In addition to what was said above, Trial Counsel added "However, I don't think it's overwhelming. And I clearly don't believe it's beyond and to the exclusion of every reasonable doubt. We talked about reasonable doubt. . . We talked about the standards of proof and we talked about reasonable doubt. . .there's no magic percentage. . . As part of your oath. . .you agreed it was [the State's] burden of proof, that Mr. Foster was presumed to be innocent and that if they don't carry the burden of proof, which is beyond and to the exclusion of every reasonable doubt, the law requires and mandates you to find Bill Foster. . . not guilty."
>
> Neither prong of the Strickland test has been met here. Ground One is denied.

Id. at 101-02 (record citations omitted). The Fifth DCA per curiam affirmed the circuit court's denial of this claim. Resp. Exs. K; N.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Foster is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, the claim in Ground Two is meritless. To the extent Foster attempts to reallege the same claim that he raised in state court, this claim is refuted by the record. During closing arguments, defense counsel made the following comments:

> I agree, as [the prosecutor] put it when she first -- when she ended her closing, that there is a substantial amount of evidence indicating that Bill Foster is guilty of a homicide.
>
> However, I don't think it's overwhelming. And I clearly don't believe that it's beyond and to the exclusion of every reasonable doubt.
>
> When we -- when we met on Monday and we talked about the standards of proof and we talked about reasonable doubt and burden of proof, it was agreed that there's no -- there's no magic percentage versus other type of litigation, a car wreck, more likely than not.
>
> And each and every one of you, as part of your oath, agreed that you would require the State of Florida to -- you agreed it was their burden of proof, that Mr. Foster was

> presumed to be innocent and that if they don't carry the
> burden of proof, which is beyond and to the exclusion of every
> reasonable doubt, the law required and mandates you to find
> Bill Foster, and any defendant in a criminal case, not guilty.
>
> And that's what we're asking you to do. We're asking
> you to follow the law.

Resp. Ex. A at 461-62. When read in context, counsel did not concede Foster's guilt.

Instead, counsel recognized that the State had provided evidence of Foster's guilt but

argued that the State failed to meet its burden of proof because the evidence did not

prove beyond a reasonable doubt that Foster was guilty. Accordingly, as the record

refutes Foster's allegation of deficient performance, relief on his claim in Ground Two is

due to be denied.

### C. Ground Three

As Ground Three, Foster asserts that "[t]rial counsel's failure, during cross-

examination of detective [M]erchant, to object, argue, or present exculpatory evidence of

the defendant's intoxication and coerced statements during the pre-[M]iranda and post

[M]iranda interrogation by detective [M]erchant [was] in violation of the defendant's 5th,

6th, and 14th Amendment rights held in the United States Constitution." Petition at 8.

Other than the above quoted selection, Foster has not alleged any other facts in support

of his claim in Ground Three.

Foster made a similar allegation in his Amended Rule 3.850 Motion. Resp. Ex. G

at 67-71. Following an evidentiary hearing, the circuit court denied relief, stating:

> At [the] hearing, Trial Counsel testified that although
> the intoxication defense was a written argument in the pre-trial
> Motion, he did not pursue it verbally because of contrary
> evidence. Through prior depositions Detective Merchant
> stated that he did not believe Defendant was intoxicated
> during the interview nor did he did [sic] smell of alcohol.

> Additionally, Deputy Ussery was of the same opinion, that Defendant did not appear to be intoxicated during the interview. Trial Counsel testified that he made a strategic decision not to argue this defense based on the evidence and lack of success pursuing this issue in the past. Trial Counsel testified that the better argument was that Defendant wanted to stop talking to Detective Merchant and expressed this to Detective Merchant, but questions continued. Trial Counsel pursued this issue with vigorous argument but was unsuccessful. Under the circumstances, Trial Counsel's strategy appears to have been reasonably sound. Additionally, Trial Counsel testified that he had reviewed the recorded interview of Defendant by Detective Merchant (which was played to the jury) and Defendant did not seem to be intoxicated. Neither prong of Strickland has been met here.

Id. at 137-38. The Fifth DCA per curiam affirmed the circuit court's denial of this claim. Resp. Exs. K; N.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Foster is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Foster's allegation here is without merit. "The Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved," and "[i]ntensive scrutiny and second guessing of attorney performance are not

permitted." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (citing Strickland, 466 U.S. at 689-90)). Indeed, the Eleventh Circuit has explained that:

> Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct. By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact, so we decide it de novo.

Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998).

At the evidentiary hearing held on this claim, J. Peyton Quarles, Foster's trial counsel, testified that Foster told him that he was intoxicated during the interrogation. Resp. Ex. G at 177. Quarles alleged Foster's intoxication was a basis for suppression of his confession in the written motion to suppress, but did not argue it or attempt to elicit testimony on it at the hearing because:

> The -- I thought -- well, I didn't think much of the intoxication argument. Intoxication, in my experience, never goes anywhere.
>
> I was impressed and I thought that the argument regarding Mr. Foster's indications that he didn't want to talk or didn't want to talk anymore or that he had said all he wanted to say were much more viable as a[n] appellate issue.

Id. at 179. During counsel's investigation Detective Merchant told counsel that he did not think Foster was intoxicated and did not smell a strong odor of alcohol. Id. at 189-90. Foster had told Quarles that Deputy Ussery had taken a beer from his hand when police picked up Foster; however, Ussery told Quarles that he never had contact with Foster in connection with this case. Id. at 191. Quarles further testified that he could find no other

witnesses to corroborate Foster's intoxication allegation. Id. at 190-92. Similarly, after reviewing the video-taped interrogation, Quarles saw nothing to suggest Foster was intoxicated. Id. at 192-93. Indeed, the transcripts from both days of the interrogation reveal that Foster understood the questions, gave responsive, cogent answers, and did not otherwise demonstrate any indications of impairment. Resp. Ex. B at 81-228. Based on the lack of evidence supporting an intoxication argument and counsel's reasonable belief that there was a better argument (even if ultimately unsuccessful) in support of suppression, the Court finds counsel's strategy was sound. Therefore, Foster has failed to demonstrate deficient performance. See Provenzano, 148 F.3d at 1330; Spaziano, 36 F.3d at 1039. Accordingly, the relief Foster seeks in Ground Three is due to be denied.

### D. Ground Four

Foster contends in Ground Four that his counsel was ineffective because he failed "to object to [the] state's unsubstantiated evidence introduced to the jury in closing arguments to bolster state witness Edward Larsen's testimony in violation of the defendant's 5th, 6th and 14th Amendment rights held in the United States Constitution." Petition at 10.

In his Amended Rule 3.850 Motion, Foster alleged a similar claim, see Resp. Ex. G at 72-74, which the circuit court denied, stating:

> At [the] hearing, Trial Counsel testified that there was in fact evidence at the trial that the Defendant had a black truck trough [sic] Detective Merchant's testimony and the Defendant's own Statement entered as evidence at the trial. An objection would have been pointless. An objection would not have likely have changed the outcome of the proceedings. Whether the truck was or was not registered to Defendant is irrelevant[.] Thus, the Court concludes that neither prong of Strickland has been met. Ground Three is denied.

Id. at 138-39 (record citations omitted). The Fifth DCA per curiam affirmed the circuit court's denial of this claim. Resp. Exs. K; N.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Foster is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, this claim is meritless. Assuming Foster adequately alleged this claim in the manner in which he did in state court, the claim is due to be denied because Foster cannot demonstrate deficient performance or prejudice.

The record reflects that during closing arguments the prosecutor made the following comment: "We know Bill Foster has a dark truck. We know he has a black truck registered to him." Resp. Ex. A at 483. In his Amended Rule 3.850 Motion, Foster contended that he did not have a black truck and the registration of the truck was not introduced at trial. Resp. Ex. G at 72-73. Edward Larsen testified at trial that he saw a blue truck. Resp. Ex. A at 48-49. Notably, during his interrogation, Foster agreed he put the victim's belongings in his black truck. Id. at 145, 149. Additionally, during the direct examination of Detective Merchant, the following exchange occurred:

> Q.     Do you know what type of truck Bill Foster had registered to him or what kind of truck Bill Foster had December 12, 2008?
>
> A.     His normal truck he drove was a black Toyota pickup truck.
>
> Q.     and is that the one -- in fact, he referenced that in -- in the video, the black truck?
>
> A.     Yes.

Id. at 199-200. In light of the above testimony, the Court finds the State did not introduce evidence during its closing arguments but instead commented on evidence already in the record. As such, there would have been no grounds on which to object to the prosecutor's comments. Counsel cannot be deficient for failing to raise a meritless argument. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Moreover, Foster cannot demonstrate prejudice because he confessed to his role in the murder and the State played the videotaped confession for the jury at trial. Resp. Ex. A at 129-93. Accordingly, even if the prosecutor had never made this comment, there is no reasonable probability the outcome of the trial would have been different. Foster has failed to prove deficient performance or prejudice; therefore, relief on his claim in Ground Four is due to be denied.

### E. Ground Five

Finally, Foster argues that his counsel was ineffective because he failed "to protest [Foster's] right to [a] fair and impartial trial when trial counsel discovered that the judge

presiding at trial (The Honorable Terry Larue) was [a] business partner with assistant state attorney Christopher France's father and failed to motion the judge to recuse himself because of the conflict in violation of the defendant's 5th, 6th, and 14th Amendment rights held in the United States Constitution." Petition at 16.

Foster raised a similar claim in his Amended Rule 3.850 Motion. Resp. Ex. G at 74-77. In rejecting this claim, the circuit court explained:

> ASA France was not a Prosecutor in this case. He was neither a party nor a party's lawyer. Defendant cannot prove any actual prejudice here. Trial Counsel was not unreasonable in advising the Defendant that that [sic] this alleged business relationship would not interfere with the impartiality and fairness of the trial, and by choosing not to file a recusal motion.
>
> Neither prong of the <u>Strickland</u> test has been met here. Ground Four is denied.

<u>Id.</u> at 103. The Fifth DCA per curiam affirmed the circuit court's denial of this claim. Resp. Exs. K; N.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Foster is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, Foster's allegation in Ground Five fails. Had Foster attempted to

properly allege this claim with factual support, he still would not be entitled to relief, because the record provides no actual support for the claim. Pursuant to Canon 5(D)(1) of Florida's Code of Judicial Conduct, "[a] judge shall not engage in financial and business dealings that (a) may reasonably be perceived to exploit the judge's judicial position, or (b) involve the judge in frequent transactions or continuing business relationships with those lawyers or other persons likely to come before the court on which the judge serves." Additionally, a judge should recuse himself or herself from a proceeding if:

> the judge knows that he or she individually or as a fiduciary, or the judge's spouse, parent, or child wherever residing, or any other member of the judge's family residing in the judge's household has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding.

Fla. Code Jud. Conduct, Canon 3(E)(1)(c).

The record reflects that Christopher France was never associated with Foster's case. Resp. Ex. B. Accordingly, as the trial judge's business partner was not a party or a lawyer to a party in this proceeding and their business was not the subject matter in controversy, there would have been no legal basis for the trial judge to recuse himself. See Fla. Code Jud. Conduct, Canons 3(E)(1)(c), 5(D)(1). As such, counsel cannot be deficient for failing to raise a meritless argument. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Moreover, Foster has failed to demonstrate how this business relationship affected his trial. In light of Foster's confession, the Court finds there is no reasonable probability the outcome of the trial would have been different had it been tried before a different judge. Foster has failed to demonstrate deficient performance or prejudice; therefore, the claim in Ground Five is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Foster seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Foster "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Foster appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of May, 2019.


MARCIA MORALES HOWARD
United States District Judge


Jax-8

C:     William Dewey Foster #133463
       Rebecca McGuigan, Esq.